UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| QUALITY MANAGEMENT, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 07-1009 (RWR) |
| | ) | |
| TIME & PLACE WORLD, L.L.C. | ) | |
| | ) | |
| Defendant, | ) | |

**MEMORANDUM IN OPPOSITION TO RULE TO SHOW CAUSE**

COMES NOW THE Defendant by counsel and opposes the Rule to show cause on the grounds as follows:

**FACTS**:

This case was transferred from the Superior Court on the basis of diversity of citizenship and amount by verified answer.

The answer avers that Defendant is in the luxury temporary lodging business and rents out a portion of the premises which are a portion of this leasehold. The answer and counterclaim state that the annual rents received from the rental of the premises exceed $75,000. In fact there are four units available for rental. These units rent from $400-500 per night. Assuming a mere fifty percent occupancy of only two rooms per night at the lower rental figure for only half of the year would that the gross revenues lost to Defendant should the Court rule in favor of the plaintiff would be $129,600 which would be well above the thresholds for damages. Defendant spent $240,000 in renovating the property which capital investment would be lost if Defendant were evicted. Defendant has filed a counterclaim for damages in the sum of $545,000.

_/s/ John F. Rodgers_
John F. Rodgers
Counsel for the Defendant
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing MEMORANDUM IN OPPOSITION TO RULE TO SHOW CAUSE was served on Joshua Greenberg, Greenstein and Luchs, PC, 1620 L Street, NW, Suite 900, Washington, DC 20036 by first class mail postage prepaid this 1st day of October, 2007.

_/s/ John F. Rodgers_
John F. Rodgers
Counsel for Defendant

Further, it is the Defendant's position that the Landlord is attempting to terminate a tenancy a year early in which the alleged rent is $7,400 per month (see Exhibit A-Lease) which equals $88,800 per annum.

**ISSUE:**

HAS DEFENDANT ALLEGED SUFFICIENT AMOUNT IN CONTROVERSY TO MEET THE JURISDICTIONAL THRESHHOLD OF $75,000?

**ARGUMENT:**

The issue of the amount in controversy is an issue that must be reviewed by the trial court. It is settled law in this Circuit, that the Court must look to the amount claimed by the party as controlling if the claim is made in good faith. James v.Lusby 162 U.S. App. DC 352, 499 F 2d 488 (1974). No allegation has been made that any allegation has been made in bad faith.

The Courts generally don't look to allegations of damages, but what is at stake in the proceedings. BEM I., L.L.C. v. ANTHROPLOGIE, INC. 301 F.3d 548 (7th Cir., 2002). Future rents due under the lease are included in amounts in controversy Id. at 552.

In this case by both the pleading of the plaintiff and the pleading of the defendant, by the lease (the terms of which are not at issue) and by the allegations in the Counter-Claim of Defendant, it is abundantly clear that the amount in controversy exceeds $75,000.

**CONCLUSION:**

For these reasons, the Court has subject matter jurisdiction over this cause.

Respectfully submitted,

Time & Place World, LLC
By Counsel

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| QUALITY MANAGEMENT, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 07-1009 (RWR) |
| | ) | |
| TIME & PLACE WORLD, L.L.C. | ) | |
| | ) | |
| Defendant, | ) | |

## ORDER

Upon Rule to Show Cause and response thereto, it is hereby

ORDERED, that the Rule is hereby rescinded.

DATE: _____        _____

Judge, United States District Court for
The District of Columbia

cc:
John F. Rodgers
Redmon, Peyton and Braswell, LLP
510 King Street, Suite 301
Alexandria, VA 22314

Joshua Greenberg,
Greenstein and Luchs, PC,
1620 L Street, NW, Suite 900,
Washington, DC 20036

# LEASE AGREEMENT

This Lease Agreement is entered into between Time & Place World, LLC, (hereinafter referred to as "**Lessee**") and Quality Management (hereinafter referred to as "**Lessor**") this 26th day of February, 2004.

WITNESSETH:

That in consideration of the representations made in Lessee's discussions with Lessor, and the rent reserved herein and the covenants herein contained, Lessor rents to Lessee, and Lessee rents from Lessor, the premises located on the sixth (6th) and seventh (7th) floors of 1020 16th Street, NW, in the District Of Columbia (the "**Premises**"), together with the exclusive use of the rooftop deck on the eighth (8th) floor and two storage rooms and the L-shaped area in the basement of the same building, subject to the terms and conditions in this agreement (the "**Lease**").

**1. Term**. The term of this Lease is for three years, commencing on the 1st day of March, 2004, and expiring on the 28th day of February, 2007, unless renewed or extended pursuant to the terms herein.

**2. Payment of Rent**. The total rent for the initial term of this Lease is Three Hundred Thirteen Thousand Dollars ($313,000.00), payable monthly at the following rates with the first installment due on the 1st day of August, 2004:

| | |
|---|---|
| $7,000.00 per month due August 1, 2004 to March, 2005; | $49,000 |
| $7,200.00 per month due March 2005 to February 2006; | $86,400 |
| $7,400.00 per month due March 2006 to February 2007; | $88,800 |
| $7,400.00 per month due March 2007 to February 2008. | $88,800 |
| | $313,000 |

Rent payments shall be due on the first day of each month without setoff, deduction, or demand, except when that day falls on a weekend or a legal holiday, in which case rent is due on the next business day. Payment shall be made to the person and at the address Lessor shall designate in writing.

Rent shall be made payable to Quality Management and mailed or delivered to the following address:
    3411 Dent Place, NW
    Washington, DC 20007.

**3. Lessee Examination and Acceptance of Premises**. Provided Lessee is presented with a satisfactory and current certificate of occupancy, Lessee acknowledges that he has examined the leased Premises and its acceptance of this Lease Agreement is conclusive evidence that said Premises are in good and satisfactory order and repair and no representations as to the condition of the Premises have been made unless otherwise specified herein. Lessee takes the Premises in its AS-IS condition.

**4. Occupancy and Use**. The Premises shall be occupied by no more than six (6) persons, including children per unit. Lessor acknowledges that the Premises will be sublet by Lessee to other parties for short-term use without notice to Lessor. No approval shall be required of Lessor for Lessee to sublet or rent the Premises to other parties.

1


EXHIBIT A

**5. Rooftop Deck.** Lessee shall have exclusive use of the rooftop deck on the eight (8th) floor of 1020 16th Street, NW. Lessee shall have the right to landscape, paint and furnish at his expense. Such rooftop deck shall be secured by a lock or coded entry that is only accessible to Lessee and its invitees and guests.

**6. Basement Use.** Lessee shall have use of two storage rooms located on the far West side of the open carpet area in the basement of 1020 16th Street, NW, Washington, DC, and Lessee shall be permitted to secure such rooms with its own locks. In addition, Lessee and its invitees or guests shall have exclusive use of the L-shaped area of such basement for use as a work-out facility. Any cost associated with converting such space into a workout facility shall be paid for by Lessee.

**7. Conference Rooms.** Lessee shall have the first right to use the southern conference room located on the first floor of 1020 16th Street, NW, Washington, DC. Lessee shall maintain reservations for the use of such conference room by other parties, and Lessor or Lessor's agent shall notify Lessee of any other party's desire to use such conference rooms.

**8. Vehicle Parking.** Lessee shall have exclusive use of the three parking spaces at the rear of the building. No automobile, truck, motorcycle, trailers or other such vehicles shall be parked in those spaces without current license plates and said vehicles must be in operating condition. Lessor agrees to enclose two of the three parking spaces by April 15, 2004. In the event this is not done Lessee shall receive a full free rent credit for each and every month (or fraction thereof) it is not done.

**9. Security Deposit.** Upon execution of this lease, Lessee will deposit with Lessor the sum of Seven Thousand Dollars ($7,000.00), which is to be held as collateral security and applied on any rent or any other charge that may remain due and owing at the expiration of this Lease, any extension thereof or holding over period or applied on any damages to the Premises caused by Lessee, its invitees, employees, or trades people, or other expenses suffered by Lessor as a result of a breach of any covenant of the Lease. Lessee may not utilize the security deposit as rent nor shall he deduct same from the last month's rent nor require Lessor to indemnify itself from said sum of money or any part thereof with respect to any particular violation or default of Lessee. In the event that any part of the said security deposit shall have been utilized by Lessor in accordance with the terms hereof or applicable law, Lessee shall, upon the delivery notice of same, immediately deposit with Lessor the amount so applied by Lessor so that Lessor shall have the full deposit on hand at all times during the term of this lease and any renewal thereof or holding over. In the event of the sale of the property upon which this Premises is situated or the transfer or assignment by Lessor of this Lease, Lessor shall have the right to transfer said security deposit to the transferee and Lessor shall be considered released from all liability for the return of the security deposit, and Lessee shall look solely to the new Lessor for the return of its security deposit. It is agreed that the foregoing shall apply to every transfer or assignment made on the security deposit to a new Lessor.

**10. Return of Security Deposit.** Within three weeks after Lessee has vacated the Premises, Lessor shall furnish Lessee, by personal delivery or by first-class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security and shall return any remaining portion of the security to Lessee.

**11. Option to Renew.** Provided that Lessee is not in default in the performance of this Lease, Lessee shall have the option to renew the Lease Agreement for an additional term of two years commencing at the expiration of the initial lease term. All of the terms and conditions of the

Lease shall apply during the renewal term except that the monthly rent from March 1, 2007, to February 28, 2008, shall be Seven Thousand Four Hundred Dollars ($7,400) increased by the percentage change in the Consumer Price Index, as published by the Department of Labor, US Bureau of Labor Statistics ("CPI") from January, 2007, to January, 2008, and the monthly rent from March 1, 2008, to February 28, 2009, shall be Seven Thousand Four Hundred Dollars ($7,400) increased by the percentage change in the CPI from January, 2008, to January, 2009. The option shall be exercised by written notice given to Lessor not less than thirty (30) days prior to the expiration of the initial lease term. If notice is not given in the manner provided herein within the time specified, this option shall expire.

12. **Right of First Refusal.** Lessee shall have the right of first refusal to rent the 5th and 8th floor residential unit(s) located at 1020 16th Street, NW, that become available at any time during the term of this Lease or any renewal or extension thereof at commercially reasonable terms for the rental of such unit(s). Lessor must provide Lessee with notice of the availability of these residential units for seven (7) business days prior to offering it for lease to any other party. In addition, Lessor must disclose to Lessee the terms of any rental contracts offered to or negotiated with any other parties for the rental of such unit(s) at least five (5) days prior to agreeing to such terms. Lessor must offer the unit for rent to Lessee at the same terms or terms no less favorable than those offered to the third party, and Lessee shall have five (5) days to accept such same or similar terms and become the lessee of such unit.

13. **Utilities.** Lessee will be responsible and pay for electric, telephone and cable TV utilities, including all required deposits. Lessee shall have electric utilities registered in its name by March 31, 2004. Lessor will be responsible and pay for water utilities and refuse collection.

14. **Alterations and Improvements.** Lessee shall complete the construction and renovation of four separate units (two units per floor) in the Premises. Lessee shall be provided with access to the Premises immediately upon execution of this Lease Agreement to begin such construction and renovation. Lessee may paper, paint and/or decorate walls, attach, remove or exchange appliances or equipment, and make any structural changes, alterations or additions to the Premises without the prior approval of Lessor. Lessor agrees to contribute Twenty-five Thousand Dollars ($25,000.00) to Lessee to complete such alterations and improvements. Said amount shall be payable to Lessee from Lessor in the following installments:

    $10,000.00 upon the execution of this Lease Agreement;
    $6,000.00 upon the completion of electrical work;
    $6,000.00 upon completion of plumbing work;
    $3,000.00 upon completion of all alterations and improvements to the Premises.

Any of the above-described work shall become part of the Premises upon termination of this Lease.

15. **Lessor's Responsibilities and Duties.** Lessor shall maintain:

    a. Effective waterproofing and weather protection of roof and exterior walls, including unbroken windows and doors, and repairs to the roof, exterior walls and structural foundation.

    b. Plumbing or gas facilities which conformed to applicable law in effect at the time of installation, maintained in good working order.

    c. A water supply approved under applicable law, which is under the control of Lessee, capable of producing hot and cold running water, or a system which is under the control of Lessor, which produces hot and cold running water, furnished to appropriate fixtures, and connected to a sewage disposal system approved under applicable law.

    d. Heating facilities which conformed with applicable law at the time of installation, maintained in good working order.

    e. Electrical lighting, with wiring and electrical equipment which conformed with applicable law at the time of installation, maintained in good working order.

    f. Good working order of all fireplaces in the Premises which conforms with applicable laws.

    g. Common areas inside and outside the building, including, but not limited to, driveways, sidewalks, lawns and shrubbery, entryways, lobbies, elevators and stairwells. Lessor to have all exterior windows washed at least once every three (3) months.

    h. Enclosure of two of the three parking spaces at the rear of the building;

    i. Compliance with the requirements of applicable building and housing codes materially affecting health and safety.

**16. Lessee's Responsibilities and Duties**. Lessee covenants:

    a. To keep that part of the Premises which he occupies and uses clean and sanitary as the condition of the Premises permits.

    b. To dispose from the Premises all rubbish, garbage and other waste, in a clean and sanitary manner.

    c. To properly use and operate all electrical, gas and plumbing fixtures and keep them as clean and sanitary as their condition permits.

    d. Not to permit any person on the Premises, with its permission, to willfully or wantonly destroy, deface, damage, impair or remove any part of the structure or dwelling unit or the facilities, equipment, or appurtenances thereto, nor himself do any such thing.

Lessee agrees that any violation of these provisions shall be considered a breach of this Lease.

**17. Quiet Enjoyment**. Lessor agrees that Lessee, keeping and performing the covenants herein contained on the part of Lessee to be kept and performed, shall at all times during the existence of this lease, renewals or extensions peaceably and quietly, have, hold, and enjoy the leased Premises, without suit, trouble or hindrance from Lessor, or any person claiming under Lessor.

**18. Disturbances and Violation of Laws**. Lessee, guests and invitees of either Lessee or guests shall not use the Premises for any unlawful purpose and shall comply fully with all applicable federal, District Of Columbia and local laws and ordinances, including laws prohibiting the use, possession or sale of illegal drugs. Nor shall Lessee, guests and invitees of either Lessee or guests use the Premises in a manner offensive to others. Nor shall Lessee, guests and invitees of either Lessee or guests create a nuisance by annoying, disturbing, inconveniencing or interfering

with the quiet enjoyment of any other tenant or nearby resident. Lessee agrees to immediately inform Lessor and the appropriate authorities upon obtaining actual knowledge of any illegal acts on or upon the leased Premises.

**19. Surrender of Premises**. Lessee will, upon termination of this Lease, surrender the Premises and all fixtures and equipment of Lessor therein in good, clean and operating condition, ordinary wear and tear excepted. Lessee shall, at time of vacating Premises, clean said Premises and remove trash from the Premises. Upon vacating the Premises Lessee shall deliver all keys thereto to Lessor or his Agent within twenty-four (24) hours after vacating. Failure to comply will be cause to charge Lessee for changing locks.

**20. Lessor's Right to Access and Inspection**. In addition to the rights provided by law, in the event of an emergency, to make repairs or improvements or to conduct an annual inspection or to address a safety or maintenance problem or to remove any alterations, additions, fixtures, and any other objects which may be affixed or erected in violation of the terms of this Lease, Lessor or Lessor's duly authorized agents may enter the Premises. Except in cases of emergency, Lessee's abandonment of the Premises, court order or where it is impractical to do so, Lessor shall give Lessee twenty-four (24) hours notice before entering.

**21. Termination of Lease - Hold Over**. Either Lessor or Lessee may terminate this lease at the expiration of said Lease or any extension thereof by giving the other thirty (30) days written notice prior to the due date. If Lessee, after having given notice of Lessee's intention to quit, shall refuse, without reasonable excuse, to surrender possession according to such notice, Lessee shall be liable to Lessor for rent at the rate of rent payable according to the terms of this Lease for all the time that Lessee shall so wrongfully hold over, to be recovered in the same way as the rent accruing before the termination of the tenancy.

Since *time is of the essence* in **all** matters of this Lease, and especially with respect to the issue of renewal, if Lessee shall hold over after the expiration of the term of this Lease, Lessee shall, in the absence of any written agreement to the contrary, be a tenant from month to month, as defined by applicable District Of Columbia law, at the monthly rate in effect during the last month of the expiring term plus $250.00, the resultant rent being Lessor's present rental fee for month to month tenancies. All other terms and provisions of this Lease shall remain in full force and effect.

In the event Lessee becomes a month-to-month tenant in the manner described above, Lessee shall be required to provide Lessor, in advance, thirty (30) days written notice of Lessee's intention to surrender the Premises. Lessor, at Lessor's discretion, at any time during a month-to-month tenancy, may terminate the month-to-month tenancy or lease by serving Lessee with a written notice of termination, or by any other means allowed law. Upon termination, Lessee shall vacate the Premises and deliver same unto Lessor on or before the expiration of the period of notice.

**22. Abandonment**. If Lessee wrongfully quits and abandons the dwelling unit during the term of the tenancy, Lessor shall make reasonable efforts to make the dwelling unit available for rental. If Lessor rents the dwelling unit for a term beginning before the expiration of this Lease, this Lease terminates as of the commencement date of the new tenancy and Lessee shall be liable for the difference in rental for the period prior to the commencement of the new tenancy. If, after making reasonable efforts to make the dwelling unit available for rental after the abandonment, Lessor fails to re-rent the Premises for a fair rental during the term, Lessee shall be liable for the

entire rent or the difference in rental, whichever may be appropriate, for the remainder of the term.

**23. Property Damage - Destruction of Property.** If the Premises are rendered totally unfit for occupancy by fire, act of God, act of rioters or public enemies, or accident, the term of this Lease shall immediately cease upon the payment of rent apportioned to the day of such happening. If, however, the Premises are only partially destroyed or damaged and Lessor decides to repair the same, such repairs shall be made by Lessor without unreasonable delay, and there shall be abatement in rent in proportion to the relationship the damaged portion of the leased Premises bears to the whole of said Premises. Lessee agrees not to damage the Premises through any act or omission, and to be responsible for any damages sustained through the acts or omissions of Lessee, Lessee's invitees, licensees, and/or guests. If such damages are incurred, Lessee is required to pay for any resulting repairs at the same time and in addition to the next month's rent payment.

**24. Disclaimer Of Security Warranties.** Lessor, Lessor's agents or employees make no warranties, guaranties or representations regarding the security of the Premises, common areas, or the apartment community, and any such warranties and representations, whether expressed or implied, are hereby disclaimed. Lessee hereby agrees and acknowledges that Lessee and occupant(s) shall have the exclusive responsibility of protecting the Premises, Lessee(s), occupant(s) and Lessee's guests from crime, fire, and other danger. Lessor shall not provide and shall have no duty to provide any security devices to Lessee with the exception of those required by applicable law. Lessee shall look solely to the Public Police Force and other forms of Public Safety for protection. Lessee agrees and acknowledges that protection against criminal action is not within the power of Lessor, Lessor's agents or employees, and though Lessor, from time to time, may provide crime deterrent services, those services cannot be relied upon by Lessee and shall not constitute a waiver of, or in any manner modify, this Lease. Upon Lessee's reasonable request, Lessor shall consider permitting Lessee to install fire safety and/or crime deterrent devices, provided such devices do not damage the Premises, create danger, and Lessee provides Lessor with duplicate keys and alarm codes enabling Lessor to access Premises.

**25. Subordination.** Lessee agrees to accept the premises subject to and subordinate to any existing or future mortgage or other lien, and Lessor reserves the right to subject premises to same.

**26. Eminent Domain.** If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premise, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent shall be apportioned as of the termination date, and any rent paid for the period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof.

**27. Default / Breach.** In the event of any default hereunder by either party, the other party shall have the right to terminate this Lease by giving the breaching party a thirty (30) day written notice of termination to the address provided below, and this Lease shall terminate upon the expiration of thirty (30) days from the delivery of such notice if the default is not remedied within a reasonable time not in excess of thirty (30) days. At the expiration of said thirty (30) day notice or any shorter period conferred under or by operation of law, Lessor shall thereupon be entitled to immediate possession of said Premises and may avail himself of any remedy provided by law for the restitution of possession and the recovery of delinquent rent, and Lessee shall not be liable for any rent after such date. If this Lease is terminated, Lessor shall return all prepaid and unearned

rent, and any amount of the security deposit recoverable by Lessee. If any notice from Lessor to Lessee is posted on the Premises, a copy of the notice shall be mailed first class U.S. mail, postage prepaid, to 1615 L Street, NW, Suite 900, in the name of Lessee, within 3 calendar days of the date of posting.

However, in the event the default is for any substantial violation of this Lease or applicable law materially affecting health and safety, the non-breaching party shall serve the breaching party with a seven (7) day written notice of termination whereupon the breaching party must cure the default by the expiration of the seven (7) day notice period or surrender the Premises.

**28. Remedies – Cumulative**. The remedies and rights contained in and conveyed by this Lease are cumulative, and are not exclusive of other rights, remedies and benefits allowed by law.

**29. Waiver**. Any waiver of a default hereunder shall not be deemed a waiver of this Lease Agreement or of any subsequent default. Acquiescence in a default shall not operate as a waiver of such default, even though such acquiescence continues for an extended period of time.

**30. Court Costs and Attorneys Fees**. In the event of a court action to legally enforce any provision of this Lease or obligation under law, including the collection of rent or other charges due hereunder, both Lessee and Lessor agree that, to the fullest extent permissible by law, if any, attorney's fees may be awarded to the prevailing party.

**31. Notice - Agents and Authority to Receive Legal Papers**. Any notice which either party may or is required to give, shall be in writing and may be given by mailing the same, by certified mail, to the address provided below. Both Lessee and Lessor agree that all notices required herein shall be deemed proper under the law if written and/or served in English.

All notices to Lessor shall be delivered to:

Quality Management
3411 Dent Place, NW
Washington, DC 20007

Telephone: (202) 338-6943

All notices to Lessee shall be delivered to:

Time & Place World, LLC
1615 L Street, NW, Suite 900
Washington, DC 20036
Telephone: 202-778-1079

**32. Paragraph Headings**. The headings of particular paragraphs and subparagraphs are inserted only for convenience and are not part of this Agreement and are not to act as a limitation on the scope of the particular paragraph to which the heading refers.

**33. Time**. Time is of the essence in all matters of this Lease Agreement.

**34. Binding on Heirs and Assigns**. This Lease shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors and assigns.

**35. Entire Agreement.** This document and any Attachments constitutes the final and entire Agreement between the parties hereto, and no promises or representations, other than those contained here and those implied by law, have been made by Lessor or Lessee. Neither Lessor or Lessee shall be bound by any terms, conditions, statements, warranties or representations, oral or written, not herein contained unless made in writing and signed by both Lessor and Lessee.

**36. Governing Law.** This Lease shall be governed by the laws of the District Of Columbia.

**37. Severability.** The provisions of this Lease are severable and in the event any provision, clause, sentence, section or part thereof is held to be invalid, illegal, unconstitutional, inapplicable or unenforceable to any person or circumstances, such invalidity, illegality, unconstitutionality, inapplicability or unenforceability shall not affect or impair any of the remaining provisions, sentences, clauses, sections, parts of the lease or their application to Lessee or other persons or circumstances. It is understood and agreed that the terms, conditions and covenants of this Lease would have been made by both parties if such invalid, illegal, unconstitutional, inapplicable or unenforceable provision, sentence, clause, section or part had not been included therein to the extent that portion of this Lease Agreement may be invalid by striking of certain words or phrases, such words or phrases shall be deemed to be stricken and the remainder of the provisions and the remainder of the other portions of this Lease Agreement shall remain in full force and effect. It is further agreed that this Lease may be executed in counterparts, each of which when considered together shall constitute the original contract.

Lessor/Agent's signature: _Re. ___ for Quality Mgmt._
_1020 16th St. Assoc._
Title: _Property Manager_
Date: _2/26/04_
Address: _3411 Oak Place, N.W._
_Washington, D.C. 20007_
Phone: _202-338-6993_
Witness to Lessor's Signature: _____
Print name: _Kara O'Donnell_    Date: _2/26/04_

Lessee acknowledges receipt of an executed copy of this Lease.
Lessee: T&P World, LLC
Signature: _T. Mitchell Willcox_
Print name: _T. Mitchell Willcox_    Date: _2/26/04_
Title: _President_
Witness to Lessee's Signature: _____
Print name: _Kara O'Donnell_    Date: _2/26/04_

8

**Lessor's Guarantor:** T. Mitchell Willey agrees to personally guarantee the payment obligations of Lessor hereunder.

_T. Mitchell Willey_ Date: 2/26/04
T. Mitchell Willey, Guarantor

9

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**

(a) (a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i)  (i)  _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    _____

    (ii)  (ii)  _____ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) (b)  Records and reports available to the lessor (check (i) or (ii) below):

    (i)  (i)  _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    _____

    (ii)  (ii)  _____ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial)**

(c) (c)  _____ Lessee has received copies of all information listed above.
(d) (d)  _____ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home*.

**Agent's Acknowledgment (initial)**

(e) (e)  _____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

_____  _____
Lessor                                  Date   Lessor                                  Date

_____  _____
Lessee                                  Date   Lessee                                  Date

_____  _____
Agent                                   Date   Agent                                   Date

10