IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| QUALITY MGT., LLC | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Civil Action No. 07-1009 (RWR) |
| | : | |
| TIME & PLACE WORLD, LLC | : | |
| *Defendant.* | : | |
| | : | |

## PLAINTIFF QUALITY MGT., LLC'S MEMORANDUM OF LAW AS TO LACK OF SUBJECT MATTER JURISDICTION

Plaintiff Quality Mgt., LLC ("Quality"), by and through its counsel, hereby submits its Memorandum of Law (the "Brief") as to the question of subject matter jurisdiction. As the elements for federal court jurisdiction, specifically, the amount in controversy requirement, are not satisfied, this Court lacks jurisdiction and this matter should be remanded to the Superior Court for the District of Columbia – Landlord and Tenant Branch.

### I.    BRIEF FACTUAL AND PROCEDURAL BACKGROUND

On February 26, 2004, Quality, as landlord, and Defendant Time & Place World, LLC ("TP World"), as tenant, entered into a Lease Agreement (the "Lease") for the commercial property located at 1020 16th Street, N.W., specifically the basement, 6th and 7th floors (the "Property"). A copy of the Lease is attached hereto as *Exhibit A.* The Lease provides that the term was for three (3) years, commencing on March 1, 2004 and terminating on February 28, 2007. *See, Exhibit A.* TP World did not vacate the Property on February 28, 2007, and remains in possession of the same through the date of Brief.

On May 9, 2007, Quality filed a Landlord and Tenant complaint (the "Complaint") in the District of Columbia Superior Court – Landlord and Tenant Branch (the "L&T Court") seeking

LAW OFFICES
GREENSTEIN DELORME & LUCHS, P.C.
1620 L STREET, N.W.
SUITE 900
WASHINGTON, D.C. 20036-5605
AREA CODE 202-452-1400

possession of the Property based on the TP World's failure to vacate the same at the conclusion

of their lease. A copy of the Complaint is attached hereto as *Exhibit B*. The Complaint does not

allege that the right to possession is premised on TP World's failure to pay rent, and in fact, no

money judgment is sought whatsoever.

On June 1, 2007, this matter came before the L&T Court for an Initial Return. At the

Initial Return, counsel for TP World filed an Answer (the "Answer"), two (2) count

Counterclaim (the "Counterclaim") – breach of contract and fraud - and a Notice of and Grounds

to Remove Action to Federal Court (the "Notice of Removal"). A copy of the Answer and

Counterclaim is attached hereto as *Exhibit C*. A copy of the Notice of Removal is attached

hereto as *Exhibit D*.

On September 18, 2007, this Court issued an Order to Show Cause premised the Court's

perceived lack of subject matter jurisdiction, specifically, the lack of the requisite amount in

controversy requirement set forth in 28 U.S.C. §1332(b).

## II.    LEGAL ARGUMENT

### A.    TP WORLD, AS THE REMOVING PARTY, BEARS THE BURDEN TO ESTABLISH JURISDICTION OF THE COURT

With respect to removal of a case from state court to federal court, the defendant bears

the burden of proof to establish the jurisdiction of this Court. *Phillips v. Corrections Corp. of*

*America*, 407 F.Supp.2d 18, 20 (D.D.C. 2005); *Kopff v. World Research Group, LLC*, 298

F.Supp.2d 50 (D.D.C. 2003); *Four-County Cmty. Servs. v. FIA Adm'rs, Inc.,* 2003 U.S. Dist.

LEXIS 23462 (D.N.C. 2003); *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 290

(1938) (In a diversity case filed in state court and subsequently removed to federal court by the

defendant, there is a "**strong presumption** that the plaintiff has not claimed a large amount in

order to confer jurisdiction on a federal court…")(emphasis added).

2

In this regard, the District Court is required to construe its own jurisdiction narrowly, and to resolve any doubts about the existence of jurisdiction in favor of remand. *Harding-Wright v. D.C. Water & Sewer Authority*, 350 F.Supp.2d 102, 104 (D.D.C. 2005); *International Union of Bricklayers & Allied Craftworkers v. Insurance Co. of the West*, 366 F.Supp.2d 33, 36 (D.D.C. 2005). Accordingly, it has been held that federal courts are of limited jurisdiction and therefore the law "presumes that 'a cause of action lies outside of the [the court's] limited jurisdiction.'" *Julien v. CCA of Tennessee, Inc.,* 268 F.Supp.2d 19, 21 (D.D.C. 2003)(internal citations omitted); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17 (1951)("Extension of the jurisdiction of federal courts by judicial interpretation is zealously guarded against."); *Martin v. Franklin Capital Corp.,* 251 F.3d 1284, 1289 (10th Cir. 2001) (Courts must "rigorously enforce" Congress' intent to restrict federal jurisdiction in diversity cases, and the presumption is therefore against removal jurisdiction.).

TP World's Memorandum in Opposition to Rule to Show Cause demonstrates that it is unable to carry its burden with respect to the amount in controversy. TP World's entire argument for having satisfied the amount in controversy requirement is premised on the damages asserted in its counterclaims. Notwithstanding Quality's position that counterclaims are insufficient to confer federal subject matter jurisdiction, discussed fully below, TP World's argument is based on speculation and conjecture. TP World argues that it may incur a loss of business should its right to possession be terminated, proffering a "formula" for how it has calculated such "damages." TP World has provided no evidence to substantiate its allegations of projected lost profits. The fact that there is a possibility that the damages may satisfy the jurisdictional amount is of no consequence – strict construction of the removal statute requires the presence of actual grounds at the time the notice of removal is filed. *Julien, supra,* at 22.

A showing based on what might occur is inadequate. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004); *see also, Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (3d. Cir. 1992) (Mere averments of jurisdiction al amount do not satisfy defendant's burden of roof for removal). "The determination of the amount in controversy is closely tied to the facts in each case." *James v. Lusby,* 499 F.2d 488, 493 (D.D.C. 1974).

TP World's reliance on *BEM I., LLC v. Anthroplogie, Inc.,* 301 F.3d 548 (7th Cir. 2002) is misplaced, and the same is easily distinguishable from the instant matter. *BEM* deals with the **plaintiff's damage prayer** and the federal (and Illinois) rule that damages can exceed that which is stated in the complaint, thereby. In *BEM,* the plaintiff moved to amend its state court complaint to increase its damage claim from $48,000.00 to $88,000.00, but upon learning of the defendant's intention to remove the case, withdrew its request for the sole purpose of defeating diversity jurisdiction. *Id.* at 551. Quality's Complaint has never asserted a monetary damages claim, nor has Quality attempt to amend its pleading to avoid removal. To the contrary, TP World has engaged in what can only be described as a dilatory tactic designed to frustrate Quality's right to an expeditious proceeding to recover possession of its real property. SCR-LT 1 (2007) (The Landlord and Tenant Court Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."). This matter was called before the L&T Court on June 1, 2007. Now, over five (5) months has elapsed, and Quality is no closer to a resolution than when this case was first filed.

**B. FEDERAL SUBJECT MATTER JURISDICTION IS DETERMINED AS OF THE DATE THE ORIGINAL COMPLAINT IS FILED AND NOT THE DATE DEFENDANT FILES ITS ANSWER AND COUNTERCLAIM; JURISDICTION DID NOT EXIST ON THE DATE THE COMPLAINT WAS FILED**

With respect to jurisdictional amount, the grounds for removal must "be apparent within the four corners of the initial pleading or subsequent paper." *Julien, supra,* 268 F.Supp. 2d at 22

(Defendant failed to prove the amount in controversy where the complaint demanded "damages in an amount to be determined by a jury, but not less than $50,000.00 ..." and discovery conducted before the notice of removal was filed did not alter that amount.); *see also, Martin v. Franklin Capital Corp., supra,* 251 F.3d at 1291; *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402 (7th Cir. 2004)(Court rejected removal looking to the amount in controversy based on the complaint and record at removal time.); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996) (abrogated on other grounds)(removability is based on the **plaintiffs'** pleadings at the time of the filing of the complaint and the time the notice of removal is filed); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) *Ching v. Mitre Corp.,* 921 F.2d 11, 13 (1st Cir. 1990) (Federal removal jurisdiction is normally ascertained from state court complaint that triggered the removal as it was pleaded at the time the petition for removal was filed.).  The standard to be applied by the trial court in certifying a case is similar to that in dismissal, and was clearly stated in *St. Paul Mercury Indemnity Co. v. Red Cab. Co.*, 303 U.S. 283 (1938):

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Id.* at 288-89.

This rule is followed by the District of Columbia Circuit. *James, supra,* 499 F.2d at 492.

The removal statute, 28 U.S.C. §1441 is to be strictly construed **against removal** because "federal courts should not extend their jurisdiction beyond the confines delineated by the statute." *Cabe v. Pennwalt Corporation*, 372 F.Supp. 780 (W.D. NC 1974); *Shamrock Oil & Gas Corp. v. Sheets*, 313 US 100, 108-09 (1941) (Federal jurisdiction must be rejected if there is **any doubt** as to the right or removal in the first instance); *see also*, *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). This Court has also stated that the removal statute requires the presence of actual grounds at the time the notice for removal is filed. *Julien, supra,* at 22.

Quality does not seek an award of damages, but rather a judicial decree that it is entitled to possession of the Property. While Quality may be owed money by TP World for unpaid rent under the Lease, the same is not the subject matter of the instant action. Accordingly, as there is no *ad damnum* clause seeking monetary damages either at the time the Complaint was filed or at the time this matter was removed by TP World (or, to date, for that matter), Quality's pleadings fail to provide sufficient grounds for removal of this garden variety landlord and tenant action to this Court.

TP World has also failed to carry its burden with respect to proof of the value of the rights at issue in this matter. TP World, as discussed in Section A, supra, makes conclusory arguments that it will suffer a loss of profits should its right to possession of the Property be terminated and provides no supporting evidence whatsoever. TP World simply states that there are four (4) units that it offers to rent at a rate of between Four Hundred Dollars ($400.00) and Five Hundred Dollars ($500.00) per night. No copies of any rental agreements or accounting statements were provided to substantiate this claim. TP World then basis the value of the rights on an **assumption** of fifty percent (50%) occupancy for two (2) of the four (4) rooms at the lower rental figure for half a year. Again, TP World provides no proof that they have

6

commitments to provide any rooms for any period of time. Mere speculation as to lost future profits is inadequate, and TP World's further failure to provide evidence to support its averment as to satisfying the jurisdictional amount is fatal to its argument. *See, e.g., Valdez, supra,* at 1117 (A showing based on what might occur is inadequate); *Gaus, supra*, at 567 (Mere averments of jurisdictional amount do not satisfy defendant's burden of roof for removal); *James, supra,* at 493 ("The determination of the amount in controversy is closely tied to the facts in each case.").

### C. COUNTERCLAIMS ARE INSUFFICIENT TO ESTABLISH FEDERAL SUBJECT MATTER JURISDICTION

The law is unsettled with respect to whether a matter may be removed to federal court with the counterclaim serving as the sole mechanism satisfying the amount in controversy requirement.[1] There are two (2) competing approaches, but regardless of which approach is applied in the instant situation, TP World's counterclaims are insufficient to confer federal subject matter jurisdiction.

### 1. COUNTERCLAIMS ARE EXCLUDED FROM THE AMOUNT IN CONTROVERSY CALCULATION

Courts have denied jurisdiction on the basis of the sum of claim and counterclaim. *See, i.e., American Oil Company v. Egan,* 357 F. Supp. 610 (D. Minn. 1973); *Coastal Air Service, Inc. v. Tarco Aviation Service, Inc.,* 301 F. Supp. 586 (S.D. Ga. 1969); *Rudder v. Ohio State Life Insurance Company*, 208 F. Supp. 577 (E.D. Ky. 1962); *Continental Carriers, Inc. v. Goodpasture*, 169 F.Supp. 602 (M.D. Ga. 1959); *Burton Lines, Inc. v. Mansky*, 265 F.Supp. 489 (M.D.N.C. 1967). In Virginia, the Court in *Bryant Electric Company, Inc. v. Joe Rainero Tile Company, Inc.,* 84 F.R.D. 120 (W.D.Va. 1979), discussed this very issue and determined that

---

[1]  Undersigned was unable to find any opinion from this Circuit which discussed the matter.

counterclaims were an insufficient basis for satisfying the amount in controversy requirement for conferring federal subject matter jurisdiction.[2]

This practice follows the line of thought that the statutes allowing diversity jurisdiction are an expression of Congress' intent to look no further than the plaintiff's complaint to determine whether the amount in controversy has been met, with no consideration to a counterclaim – whether compulsory or permissive. *Cabe v. Pennwalt Corp.,* 372 F.Supp 780 (W.D.N.C. 1974); *Rudder, supra.*

### 2. PERMISSIVE VERSUS COMPULSORY COUNTERCLAIMS UNDER STATE LAW

Some states previously focused on whether the counterclaim is permissive or compulsory, allowing the later to be included in the amount in controversy calculation. *See, i.e., Wheatley v. Martin,* 62 F.Supp 109 (W.D. Ark. 1945) (overruled by *Ingram v. Sterling*, 141 F. Supp. 786 (W.D. Ark. 1956); *Lange v. Chicago, R.I & Pac. R. Co.,* 99 F. Supp. 1 (D.C. Iowa). In *Lange, supra,* the Court explained its holding as follows:

> In the instant case the defendant had no alternative under the Iowa practice, Rule 29, supra, but to assert or lose forever a right to assert the counterclaim in the action commenced in the State court. The 'matter in controversy' here is not the amount which the plaintiff claims, but is also that which under necessity the defendant must assert to be litigated if it is to resist the plaintiff's demands and enforce its own. The protection of its rights compels the assertion of its demands. It is deprived of any choice.

*Id.* at 2.

The argument against the application of such a rule is that it forces the federal court to make a determination whether a counterclaim was permissive or compulsory under local state law. This runs afoul of the proposition that federal law - not state law – determines who is a

---

[2]  Virginia does not differentiate between permissive and compulsory counterclaims. Accordingly, all counterclaims in Virginia are deemed permissive and are at the option of the defendant.

plaintiff and who is a defendant in a removal action. *Chicago, R.I. & Pac. R. Co. v. Stude,* 346 U.S. 574 (1954).

Nevertheless, if this approach were adopted in the instant matter, remand is proper. The Court must first determine whether TP World's counterclaims are compulsory or permissive pursuant to District of Columbia law. As the underlying matter was filed in the L&T Court, the rules of that forum will be the determining factor. Specifically, Rule 5(b) of the Superior Court Rules of Civil Procedure for the Landlord and Tenant Court (the "L&T Rules" or the "L&T Rule") provides:

> In actions in [the L&T Court] for recovery of possession of property in which the basis of recovery is nonpayment of rent or in which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for money damages based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. **No other counterclaims, whether based on personal injury or otherwise, may be filed in this branch**. This exclusion shall be without prejudice to the prosecution of such claims in other branches of the court.

SCR-LT 5(b) (2007) (emphasis added).[3]

The instant suit is not based on non-payment of rent, but rather the expiration of the Lease itself. *See, Exhibit B.* Accordingly, there are no permitted counterclaims in the L&T Court under Rule 5(b). Furthermore, the Counterclaim seeks relief for "breach of contract" and "fraud," neither of which satisfy the strict prohibitions on counterclaims expressed in Rule 5(b). The Counterclaims will not be lost to TP World (unlike the scenario in *Lang, supra*), as TP World is free to file an independent action to seek redress for its alleged harms.

---

[3] The District of Columbia Court of Appeals has interpreted the Rule as being "designed to insure an expeditious resolution of landlord and tenant disputes." *Millman Border & Curtis, v. D.F. Antonelli, Jr.*, 489 A.2d 481, 484 (D.C. 1984).

9

As discussed in Section A above, the strict construction of the removal statute requires the presence of **actual grounds** at the time the notice for removal is filed and as no actual grounds exist in the instant matter - the Complaint does not seek a monetary award and the counterclaims are improper under the Rules of the L&T Court and cannot survive a motion to strike.[4]

### III.    CONCLUSION

The Complaint in the instant case does not satisfy TP World's burden of proof.  The Complaint does not seek monetary damages, and therefore cannot be found to support the threshold amount required to meet the amount in controversy requirement.  Furthermore, it is clear that TP World's counterclaims (1) do not confer federal subject matter jurisdiction over the matter as damages alleged in counterclaims are not considered when computed the amount in controversy; and, (2) the counterclaims are not viable under the L&T Rules and therefore are improperly pleaded to begin with.  Accordingly, this Court must remand this case to the Superior Court of the District of Columbia – Landlord and Tenant Branch.

---

[4]  In fact, should this matter be remanded to the L&T Court, Quality will file just such a motion to strike as to the counterclaims.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

/S/ Joshua M. Greenberg

Dated: October 24, 2007

Richard W. Luchs, 243931
William C. Casano, 352492
Joshua M. Greenberg, 489323
1620 L Street, N.W.
Suite 900
Washington, DC 20036-5605
Telephone: (202) 452-1400
E-mail: jmg@gdllaw.com

Counsel for Plaintiff Quality Mgt., LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Plaintiff's Memorandum of Law as to Lack of Subject Matter Jurisdiction and Exhibits A – D were served via the Court's electronic filing system this 24th day of October, 2007 on John F. Rogers, Esq., Redmon, Peyton and Braswell, LLP, 510 King Street, Suite 301, Alexandria, VA 22314.

/S/ Joshua M. Greenberg
Joshua M. Greenberg

11

**Exhibit A:  Lease**

## LEASE AGREEMENT

This Lease Agreement is entered into between Time & Place World, LLC, (hereinafter referred to as "**Lessee**") and  Quality Management (hereinafter referred to as "**Lessor**") this ⎯⎯ day of February, 2004.

### WITNESSETH:

That in consideration of the representations made in Lessee's discussions with Lessor, and the rent reserved herein and the covenants herein contained, Lessor rents to Lessee, and Lessee rents from Lessor, the premises located on the sixth (6th)and seventh (7th) floors of 1020 16th Street, NW, in the District Of Columbia (the "**Premises**"), together with the exclusive use of the rooftop deck on the eighth (8th) floor and two storage rooms and the L-shaped area in the basement of the same building, subject to the terms and conditions in this agreement (the "**Lease**").

**1.  Term**.  The term of this Lease is for three years, commencing on the 1st day of March, 2004, and expiring on the 28th day of February, 2007, unless renewed or extended pursuant to the terms herein.

**2.  Payment of Rent**.  The total rent for the initial term of this Lease is Three Hundred Thirteen Thousand Dollars ($313,000.00), payable monthly at the following rates with the first installment due on the 1st day of August, 2004:

| | |
|---|---|
| $7,000.00 per month due August 1, 2004 to March, 2005; | $49,000 |
| $7,200.00 per month due March 2005 to February 2006; | $86,400 |
| $7,400.00 per month due March 2006 to February 2007; | $88,800 |
| $7,400.00 per month due March 2007 to February 2008. | $88,800 |
| | $313,000 |

Rent payments shall be due on the first day of each month without setoff, deduction, or demand, except when that day falls on a weekend or a legal holiday, in which case rent is due on the next business day.  Payment shall be made to the person and at the address Lessor shall designate in writing.

Rent shall be made payable to Quality Management and mailed or delivered to the following address:

  3411 Dent Place, NW
  Washington, DC 20007.

**3.  Lessee Examination and Acceptance of Premises**.  Provided Lessee is presented with a satisfactory and current certificate of occupancy, Lessee acknowledges that he has examined the leased Premises and its acceptance of this Lease Agreement is conclusive evidence that said Premises are in good and satisfactory order and repair and no representations as to the condition of the Premises have been made unless otherwise specified herein. Lessee takes the Premises in its AS-IS condition.

**4.  Occupancy and Use**.  The Premises shall be occupied by no more than six (6) persons, including children per unit.  Lessor acknowledges that the Premises will be sublet by Lessee to other parties for short-term use without notice to Lessor.  No approval shall be required of Lessor for Lessee to sublet or rent the Premises to other parties.

1

**5. Rooftop Deck.** Lessee shall have exclusive use of the rooftop deck on the eight (8") floor c 1020 16th Street, NW. Lessee shall have the right to landscape, paint and furnish at his expense Such rooftop deck shall be secured by a lock or coded entry that is only accessible to Lessee an its invitees and guests.

**6. Basement Use.** Lessee shall have use of two storage rooms located on the far West side of open carpet area in the basement of 1020 16th Street, NW, Washington, DC, and Lessee shall b permitted to secure such rooms with its own locks. In addition, Lessee and its invitees or gues1 shall have exclusive use of the L-shaped area of such basement for use as a work-out facility. Any cost associated with converting such space into a workout facility shall be paid for by Lessee.

**7. Conference Rooms.** Lessee shall have the first right to use the southern conference room located on the first floor of 1020 16th Street, NW, Washington, DC. Lessee shall maintain reservations for the use of such conference room by other parties, and Lessor or Lessor's agent shall notify Lessee of any other party's desire to use such conference rooms.

**8. Vehicle Parking.** Lessee shall have exclusive use of the three parking spaces at the rear of building. No automobile, truck, motorcycle, trailers or other such vehicles shall be parked in those spaces without current license plates and said vehicles must be in operating condition. Lessor agrees to enclose two of the three parking spaces by April 15, 2004. In the event this is not done Lessee shall receive a full free rent credit for each and every month (or fraction therec it is not done.

**9. Security Deposit.** Upon execution of this lease, Lessee will deposit with Lessor the sum of Seven Thousand Dollars ($7,000.00), which is to be held as collateral security and applied on a rent or any other charge that may remain due and owing at the expiration of this Lease, any extension thereof or holding over period or applied on any damages to the Premises caused by Lessee, its invitees, employees, or trades people, or other expenses suffered by Lessor as a resu of a breach of any covenant of the Lease. Lessee may not utilize the security deposit as rent nc shall he deduct same from the last month's rent nor require Lessor to indemnify itself from said sum of money or any part thereof with respect to any particular violation or default of Lessee. the event that any part of the said security deposit shall have been utilized by Lessor in accordance with the terms hereof or applicable law, Lessee shall, upon the delivery notice of same, immediately deposit with Lessor the amount so applied by Lessor so that Lessor shall ha the full deposit on hand at all times during the term of this lease and any renewal thereof or holding over. In the event of the sale of the property upon which this Premises is situated or th transfer or assignment by Lessor of this Lease, Lessor shall have the right to transfer said secur deposit to the transferee and Lessor shall be considered released from all liability for the return the security deposit, and Lessee shall look solely to the new Lessor for the return of its security deposit. It is agreed that the foregoing shall apply to every transfer or assignment made on the security deposit to a new Lessor.

**10. Return of Security Deposit.** Within three weeks after Lessee has vacated the Premises, Lessor shall furnish Lessee, by personal delivery or by first-class mail, postage prepaid, a copy an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security and shall return any remaining portion of the security to Lessee.

**11. Option to Renew.** Provided that Lessee is not in default in the performance of this Lease, Lessee shall have the option to renew the Lease Agreement for an additional term of two years commencing at the expiration of the initial lease term. All of the terms and conditions of the

Lease shall apply during the renewal term except that the monthly rent from March 1, 2007, to February 28, 2008, shall be Seven Thousand Four Hundred Dollars ($7,400) increased by the percentage change in the Consumer Price Index, as published by the Department of Labor, US Bureau of Labor Statistics ("CPI") from January, 2007, to January, 2008, and the monthly rent from March 1, 2008, to February 28, 2009, shall be Seven Thousand Four Hundred Dollars ($7,400) increased by the percentage change in the CPI from January, 2008, to January, 2009. The option shall be exercised by written notice given to Lessor not less than thirty (30) days prior to the expiration of the initial lease term. If notice is not given in the manner provided herein within the time specified, this option shall expire.

**12. Right of First Refusal.** Lessee shall have the right of first refusal to rent the 5th and 8th floor residential unit(s) located at 1020 16th Street, NW, that become available at any time during the term of this Lease or any renewal or extension thereof at commercially reasonable terms for the rental of such unit(s). Lessor must provide Lessee with notice of the availability of these residential units for seven (7) business days prior to offering it for lease to any other party. In addition, Lessor must disclose to Lessee the terms of any rental contracts offered to or negotiated with any other parties for the rental of such unit(s) at least five (5) days prior to agreeing to such terms. Lessor must offer the unit for rent to Lessee at the same terms or terms no less favorable than those offered to the third party, and Lessee shall have five (5) days to accept such same or similar terms and become the lessee of such unit.

**13. Utilities.** Lessee will be responsible and pay for electric, telephone and cable TV utilities, including all required deposits. Lessee shall have electric utilities registered in its name by March 31, 2004. Lessor will be responsible and pay for water utilities and refuse collection.

**14. Alterations and Improvements.** Lessee shall complete the construction and renovation of four separate units (two units per floor) in the Premises. Lessee shall be provided with access to the Premises immediately upon execution of this Lease Agreement to begin such construction and renovation. Lessee may paper, paint and/or decorate walls, attach, remove or exchange appliances or equipment, and make any structural changes, alterations or additions to the Premises without the prior approval of Lessor. Lessor agrees to contribute Twenty-five Thousand Dollars ($25,000.00) to Lessee to complete such alterations and improvements. Said amount shall be payable to Lessee from Lessor in the following installments:

> $10,000.00 upon the execution of this Lease Agreement;
> $6,000.00 upon the completion of electrical work;
> $6,000.00 upon completion of plumbing work;
> $3,000.00 upon completion of all alterations and improvements to the Premises.

Any of the above-described work shall become part of the Premises upon termination of this Lease.

**15. Lessor's Responsibilities and Duties.** Lessor shall maintain:

a. Effective waterproofing and weather protection of roof and exterior walls, including unbroken windows and doors, and repairs to the roof, exterior walls and structural foundation.

b. Plumbing or gas facilities which conformed to applicable law in effect at the time of installation, maintained in good working order.

A water supply approved under applicable law, which is under the control of Less
capable of producing hot and cold running water, or a system which is under the c
of Lessor, which produces hot and cold running water, furnished to appropriate fi
and connected to a sewage disposal system approved under applicable law.

Heating facilities which conformed with applicable law at the time of installation,
maintained in good working order.

Electrical lighting, with wiring and electrical equipment which conformed with
applicable law at the time of installation, maintained in good working order.

Good working order of all fireplaces in the Premises which conforms with applica
laws.

Common areas inside and outside the building, including, but not limited to, drive
sidewalks, lawns and shrubbery, entryways, lobbies, elevators and stairwells.  Les
have all exterior windows washed at least once every three (3) months.

Enclosure of two of the three parking spaces at the rear of the building;

Compliance with the requirements of applicable building and housing codes mate
affecting health and safety.

**ssee's Responsibilities and Duties**.  Lessee covenants:

To keep that part of the Premises which he occupies and uses clean and sanitary a
condition of the Premises permits.

To dispose from the Premises all rubbish, garbage and other waste, in a clean and
sanitary manner.

To properly use and operate all electrical, gas and plumbing fixtures and keep the
clean and sanitary as their condition permits.

Not to permit any person on the Premises, with its permission, to willfully or wan
destroy, deface, damage, impair or remove any part of the structure or dwelling u
the facilities, equipment, or appurtenances thereto, nor himself do any such thing.

agrees that any violation of these provisions shall be considered a breach of this L

**iet Enjoyment**.  Lessor agrees that Lessee, keeping and performing the covenants
ed on the part of Lessee to be kept and performed, shall at all times during the exis
se, renewals or extensions peaceably and quietly, have, hold, and enjoy the leased
s, without suit, trouble or hindrance from Lessor, or any person claiming under Le

**turbances and Violation of Laws**.  Lessee, guests and invitees of either Lessee o
t use the Premises for any unlawful purpose and shall comply fully with all applica
District Of Columbia and local laws and ordinances, including laws prohibiting th
ion or sale of illegal drugs.  Nor shall Lessee, guests and invitees of either Lessee
se the Premises in a manner offensive to others.  Nor shall Lessee, guests and invi
essee or guests create a nuisance by annoying, disturbing, inconveniencing or inte

with the quiet enjoyment of any other tenant or nearby resident. Lessee agrees to immediately inform Lessor and the appropriate authorities upon obtaining actual knowledge of any illegal acts on or upon the leased Premises.

**19. Surrender of Premises.** Lessee will, upon termination of this Lease, surrender the Premises and all fixtures and equipment of Lessor therein in good, clean and operating condition, ordinary wear and tear excepted. Lessee shall, at time of vacating Premises, clean said Premises and remove trash from the Premises. Upon vacating the Premises Lessee shall deliver all keys thereto to Lessor or his Agent within twenty-four (24) hours after vacating. Failure to comply will be cause to charge Lessee for changing locks.

**20. Lessor's Right to Access and Inspection.** In addition to the rights provided by law, in the event of an emergency, to make repairs or improvements or to conduct an annual inspection or to address a safety or maintenance problem or to remove any alterations, additions, fixtures, and any other objects which may be affixed or erected in violation of the terms of this Lease, Lessor or Lessor's duly authorized agents may enter the Premises. Except in cases of emergency, Lessee's abandonment of the Premises, court order or where it is impractical to do so, Lessor shall give Lessee twenty-four (24) hours notice before entering.

**21. Termination of Lease - Hold Over**. Either Lessor or Lessee may terminate this lease at the expiration of said Lease or any extension thereof by giving the other thirty (30) days written notice prior to the due date. If Lessee, after having given notice of Lessee's intention to quit, shall refuse, without reasonable excuse, to surrender possession according to such notice, Lessee shall be liable to Lessor for rent at the rate of rent payable according to the terms of this Lease for all the time that Lessee shall so wrongfully hold over, to be recovered in the same way as the rent accruing before the termination of the tenancy.

Since *time is of the essence* in **all** matters of this Lease, and especially with respect to the issue of renewal, if Lessee shall hold over after the expiration of the term of this Lease, Lessee shall, in the absence of any written agreement to the contrary, be a tenant from month to month, as defined by applicable District Of Columbia law, at the monthly rate in effect during the last month of the expiring term plus $250.00, the resultant rent being Lessor's present rental fee for month to month tenancies. All other terms and provisions of this Lease shall remain in full force and effect.

In the event Lessee becomes a month-to-month tenant in the manner described above, Lessee shall be required to provide Lessor, in advance, thirty (30) days written notice of Lessee's intention to surrender the Premises. Lessor, at Lessor's discretion, at any time during a month-to-month tenancy, may terminate the month-to-month tenancy or lease by serving Lessee with a written notice of termination, or by any other means allowed law. Upon termination, Lessee shall vacate the Premises and deliver same unto Lessor on or before the expiration of the period of notice.

**22. Abandonment**. If Lessee wrongfully quits and abandons the dwelling unit during the term of the tenancy, Lessor shall make reasonable efforts to make the dwelling unit available for rental. If Lessor rents the dwelling unit for a term beginning before the expiration of this Lease, this Lease terminates as of the commencement date of the new tenancy and Lessee shall be liable for the difference in rental for the period prior to the commencement of the new tenancy. If, after making reasonable efforts to make the dwelling unit available for rental after the abandonment, Lessor fails to re-rent the Premises for a fair rental during the term, Lessee shall be liable for the

entire rent or the difference in rental, whichever may be appropriate, for the remainder of the term.

**23.  Property Damage – Destruction of Property**.  If the Premises are rendered totally unfit for occupancy by fire, act of God, act of rioters or public enemies, or accident, the term of this Lease shall immediately cease upon the payment of rent apportioned to the day of such happening.  If, however, the Premises are only partially destroyed or damaged and Lessor decides to repair the same, such repairs shall be made by Lessor without unreasonable delay, and there shall be abatement in rent in proportion to the relationship the damaged portion of the leased Premises bears to the whole of said Premises.  Lessee agrees not to damage the Premises through any act or omission, and to be responsible for any damages sustained through the acts or omissions of Lessee, Lessee's invitees, licensees, and/or guests.  If such damages are incurred, Lessee is required to pay for any resulting repairs at the same time and in addition to the next month's rent payment.

**24.  Disclaimer Of Security Warranties**.  Lessor, Lessor's agents or employees make no warranties, guaranties or representations regarding the security of the Premises, common areas, or the apartment community, and any such warranties and representations, whether expressed or implied, are hereby disclaimed.  Lessee hereby agrees and acknowledges that Lessee and occupant(s) shall have the exclusive responsibility of protecting the Premises, Lessee(s), occupant(s) and Lessee's guests from crime, fire, and other danger.  Lessor shall not provide and shall have no duty to provide any security devices to Lessee with the exception of those required by applicable law.  Lessee shall look solely to the Public Police Force and other forms of Public Safety for protection.  Lessee agrees and acknowledges that protection against criminal action is not within the power of Lessor, Lessor's agents or employees, and though Lessor, from time to time, may provide crime deterrent services, those services cannot be relied upon by Lessee and shall not constitute a waiver of, or in any manner modify, this Lease.  Upon Lessee's reasonable request, Lessor shall consider permitting Lessee to install fire safety and/or crime deterrent devices, provided such devices do not damage the Premises, create danger, and Lessee provides Lessor with duplicate keys and alarm codes enabling Lessor to access Premises.

**25.  Subordination**.  Lessee agrees to accept the premises subject to and subordinate to any existing or future mortgage or other lien, and Lessor reserves the right to subject premises to same.

**26.  Eminent Domain**.  If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premise, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking.  The rent shall be apportioned as of the termination date, and any rent paid for the period beyond that date shall be repaid to Lessee.  Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof.

**27.  Default / Breach**.  In the event of any default hereunder by either party, the other party shall have the right to terminate this Lease by giving the breaching party a thirty (30) day written notice of termination to the address provided below, and this Lease shall terminate upon the expiration of thirty (30) days from the delivery of such notice if the default is not remedied within a reasonable time not in excess of thirty (30) days.  At the expiration of said thirty (30) day notice or any shorter period conferred under or by operation of law, Lessor shall thereupon be entitled to immediate possession of said Premises and may avail himself of any remedy provided by law for the restitution of possession and the recovery of delinquent rent, and Lessee shall not be liable for any rent after such date.  If this Lease is terminated, Lessor shall return all prepaid and unearned

6

rent, and any amount of the security deposit recoverable by Lessee. If any notice from Lessor to Lessee is posted on the Premises, a copy of the notice shall be mailed first class U.S. mail, postage prepaid, to 1615 L Street, NW, Suite 900, in the name of Lessee, within 3 calendar day of the date of posting.

However, in the event the default is for any substantial violation of this Lease or applicable law materially affecting health and safety, the non-breaching party shall serve the breaching party with a seven (7) day written notice of termination whereupon the breaching party must cure the default by the expiration of the seven (7) day notice period or surrender the Premises.

**28. Remedies – Cumulative**. The remedies and rights contained in and conveyed by this Lease are cumulative, and are not exclusive of other rights, remedies and benefits allowed by law.

**29. Waiver**. Any waiver of a default hereunder shall not be deemed a waiver of this Lease Agreement or of any subsequent default. Acquiescence in a default shall not operate as a waive of such default, even though such acquiescence continues for an extended period of time.

**30. Court Costs and Attorneys Fees**. In the event of a court action to legally enforce any provision of this Lease or obligation under law, including the collection of rent or other charges due hereunder, both Lessee and Lessor agree that, to the fullest extent permissible by law, if any attorney's fees may be awarded to the prevailing party.

**31. Notice – Agents and Authority to Receive Legal Papers**. Any notice which either party may or is required to give, shall be in writing and may be given by mailing the same, by certific mail, to the address provided below. Both Lessee and Lessor agree that all notices required herein shall be deemed proper under the law if written and/or served in English.

All notices to Lessor shall be delivered to:

Quality Management
3411 Dent Place, NW
Washington, DC 20007

Telephone: (202) 338-6943

All notices to Lessee shall be delivered to:

Time & Place World, LLC
1615 L Street, NW, Suite 900
Washington, DC 20036
Telephone: 202-778-1079

**32. Paragraph Headings**. The headings of particular paragraphs and subparagraphs are insert only for convenience and are not part of this Agreement and are not to act as a limitation on the scope of the particular paragraph to which the heading refers.

**33. Time**. Time is of the essence in all matters of this Lease Agreement.

**34. Binding on Heirs and Assigns**. This Lease shall be binding upon and inure to the benefit the parties hereto, their respective heirs, executors, administrators, successors and assigns.

**35. Entire Agreement.** This document and any Attachments constitutes the final and entire Agreement between the parties hereto, and no promises or representations, other than those contained here and those implied by law, have been made by Lessor or Lessee. Neither Lessor or Lessee shall be bound by any terms, conditions, statements, warranties or representations, oral or written, not herein contained unless made in writing and signed by both Lessor and Lessee.

**36. Governing Law.** This Lease shall be governed by the laws of the District Of Columbia.

**37. Severability.** The provisions of this Lease are severable and in the event any provision, clause, sentence, section or part thereof is held to be invalid, illegal, unconstitutional, inapplicable or unenforceable to any person or circumstances, such invalidity, illegality, unconstitutionality, inapplicability or unenforceability shall not affect or impair any of the remaining provisions, sentences, clauses, sections, parts of the lease or their application to Lessee or other persons or circumstances. It is understood and agreed that the terms, conditions and covenants of this Lease would have been made by both parties if such invalid, illegal, unconstitutional, inapplicable or unenforceable provision, sentence, clause, section or part had not been included therein to the extent that portion of this Lease Agreement may be invalid by striking of certain words or phrases, such words or phrases shall be deemed to be stricken and the remainder of the provisions and the remainder of the other portions of this Lease Agreement shall remain in full force and effect. It is further agreed that this Lease may be executed in counterparts, each of which when considered together shall constitute the original contract.

Lessor/Agent's signature: _____

Title: _Property MGR. For 1020/67th St - Quality MGMT._

Date: _2/26/04_

Address: _3411 Dent Place, NW_
_Wash. D.C. 2007_

Phone: _202-338-6983_

Witness to Lessor's Signature: _____

Print name: _Kara O'Donnell_ Date: _2/26/04_

**Lessee acknowledges receipt of an executed copy of this Lease.**
**Lessee:  T&P World, LLC**

Signature: _T. Mitchell Willey_

Print name: _T. Mitchell Willey_ Date: _2/26/04_

Title: _President_

Witness to Lessee's Signature: _____

Print name: _Kara O'Donnell_ Date: _2/26/04_

8

**Lessor's Guarantor:** T. Mitchell Willey agrees to personally guarantee the payment obligations of Lessor hereunder.

_T. Mitchell Willey_    Date: _2/20/04_

T. Mitchell Willey, Guarantor

9

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**
*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**
   (a)  (a)   Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):
      (i)            (i)     _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

      (ii)           (ii)     [X] Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

   (b)  (b)  Records and reports available to the lessor (check (i) or (ii) below):
      (i)            (i)     _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

      (ii)           (ii)     [X] Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial)**
   (c)  (c)  _____ Lessee has received copies of all information listed above.
   (d)  (d)  _____ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (initial)**
   (e)  (e)  _____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| Lessor | Date | Lessor | Date |
| Lessee | Date | Lessee | Date |
| Agent | Date | Agent | Date |

**Exhibit B:  Landlord and Tenant Complaint**

# COPY

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION, LANDLORD AND TENANT BRANCH**
BLDG. B, 409 E STREET N.W., RM. 110
Washington, D.C.    20001      Telephone 879-1152

HOURS:
8:30 a.m. - 5:00 p.m.
Saturday
9:00 a.m. - 12:00 p.m.

L&T.  **014591  07**

Quality Mgt., LLC
_____  vs.
Plaintiff/Landlord
1020 16th Street, N.W., Suite 100
Address
Washington, D.C.               20036
Zip Code

Time & Place World, LLC
Defendant/Tenant
1020 16th Street, NW, 6th Floor, 7th Floor,
Address                        Basement
Washington, D.C.               20036
Zip Code

## COMPLAINT FOR POSSESSION OF REAL ESTATE

DISTRICT OF COLUMBIA, ss:
Charlotte Ingram
_____,being first duly sworn, states: ☐ he or she is the landlord
and/or ☐ licensed real estate broker or ☒ the landlord's authorized agent of the house, apartment or office located at
1020 16th Street, N.W., 6th Floor, 7th Floor, Basement _____, Washington, D.C.
The property is in the possession of the defendant, who holds it without right.              20036
The landlord seeks possession of the property because:
A. ☐ The tenant failed to pay: $ _____, total rent due from _____ to _____; $ _____,
late fees; and/or $ _____, other fees *(Specify)* _____.
The monthly rent is $ _____. The total amount due to the landlord is $ _____.
Notice to quit has been: ☐ served as required by law ☐ waived in writing.
B. ☐ Tenant failed to vacate property after notice to quit expired. *(copy attached).*
C. ☒ For the following reason: *(explain fully)*
Tenant failed to vacate upon expiration of lease.

Notice to quit is: ☒ not required   ☐ waived in writing   ☐ other

Therefore, the landlord asks the Court for:
☒ judgment for possession of the property described.
☐ judgment for rent, late fees, other fees and costs in the amount of $ _____.
☒ an order of the Court that all future rent be paid into the Registry of the Court until the case is decided.

Charlotte Ingram
Plaintiff / Landlord or Agent

Subscribed before me this _8th_ day of _May_ _2007_

Crystal Legesy
Notary Public

05 / 16 / 2010
My Commission expires

## SUMMONS — TO APPEAR IN COURT

YOU ARE HEREBY SUMMONED AND REQUIRED TO APPEAR ON ____ **JUN - 1 2007** ____ AT 9:00
A.M.  PROMPTLY, in Landlord and Tenant Court, Courtroom Bldg. B, 409 E Street N.W. to answer your landlord's
complaint for possession of the premises listed in the above complaint.  If you live on the premises and you are not
named as a tenant you must come to court if you claim a right to possession of the premises.

## CONVOCATORIA — DE COMPARENCIA AL TRIBUNAL

A USTED SE LE ORDENA Y EXIGE QUE COMPAREZCA EL ____ **JUN - 1 2007** ____, A LAS 9:00 A.M.
al Tribunal de Arrendadores y Arrendatarios, Edificio B, 409 E Street N.W. a contestar la demanda entablada por
ocupacion de la propiedad aqui citada.  Si usted vive en esa propiedad sin que se le mencione como inquilino, debe
presentarse al Tribunal para reclamar cualquier derecho de ocupacion que tenga sobre la misma.
GREENSTEIN DELORME & LUCHS, P.C.

Plaintiff's/Landlord's Attorney Joshua M. Greenberg/Abrielle B. Anderson
Abogado del demandante/Arrendador
1620 L St., NW, #900, WDC 20036
Address/Direccion    Zip Code/Codigo postal
(202) 452-1400      489323/501203
Phone No            Unified Bar No.
Telefono            No. de afiliacion
                    Sociedad de Abogados

CLERK OF THE COURT
SECRETARIO DEL TRIBUNAL
Costs of this suit to date are
Costos del juicio hasta la fecha
$ 26.90

**Exhibit C:  Landlord and Tenant Answer and Counterclaim**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division - Landlord and Tenant Branch

Quality Management, L.L.C
    Plaintiff

      v.                                    LT 14591-07

TIME AND PLACE WORLD, L.L.C.
    Defendant

## ANSWER AND COUNTERCLAIM

### ANSWER

Defendant denies the allegations in the Complaint to the extent there are any allegations in the

Complaint.

### AFFIRMATIVE DEFENSES

1. Laches.

2. Estoppel.

3. Accord and Satisfaction.

4. Prior breach of contract in the landlord used self-help to take over part of leased space.

5. License.

6. Fraud.

    A. When Defendant rented the space he relied upon certain assurances by Plaintiff in

formation of the contract that the lease continued until 2008 and that he would have use of

certain rooms in the space on an as needed basis and Tenant would be permitted to post a sign

outside of the building.

    B. Plaintiff has not abided by these terms.

COUNTERCLAIM
COUNT 1 - BREACH OF LEASE

1.  Defendant- Counter/Plaintiff is a Virginia limited liability company with offices and space located at 1020 16th Street, NW, Washington, DC, 20036 (herein "Tenant")

2.  Plaintiff- Counter/Defendant is the owner of 1020 16th Street, NW, Washington, DC 20036 (herein "Landlord").

3.  Plaintiff-Counter/Defendant (herein called "Landlord") and Plaintiff (herein called "Tenant") entered into a lease dated February 26, 2004.

4.  On or about April, 2006, Landlord in violation of the lease and DC Law removed Plaintiff's belongings and barred plaintiff from using the conference room as stipulated in the lease and removed signage of Tenant without securing a Court order.  Said violation has been on-going since April, 2006.

5.  On May 1, 2006 and again on May 15, 2006, Tenant informed landlord of the violation in writing.

6.  Tenant withheld a portion of its rents at that time, and kept them available should the breach be cured.

7.  On or about January 6, 2007, Landlord wrote to tenant and asked about the back rents.

8.  On or about January 8, 2007, Tenant responded to landlord with copies of earlier letters.

9. On or about February 9, 2007, in retaliation for Tenant's objections to landlord's self-help breach of the lease and DC laws, landlord's agent wrote to Tenant informing tenant that the lease would be expiring on February 28, 2007 and demanded that Tenant vacate the premises.

10.  Tenant responded that the lease would not expire on that date but a year later and that

Landlord was in violation of the lease and said violations have not been rectified.

11. Tenant is has since March 1, 2007 paid rent in excess of the amount due because of Landlord's intentional breach of the lease in the amount $ 2,000 per month.

12. Landlord cannot enforce the terms of the lease while Landlord is in breach of the terms of the lease.

COUNT II - FRAUD

13. Landlord made certain assurances to tenant both verbally and in writing in the formation of the lease namely that the lease would run to February, 2008 and that the tenant would be permitted to use certain space in the building and to post a sign outside of the building.

14. Tenant relied upon these assurances in the formation of the contract.

15. Tenant is in the business of providing luxury temporary lodging to persons.

16. Tenant is paid by customers at a rate of $400-500 per night per room rented.

17. Tenant expended $150,000 in lease improvements which will be lost upon eviction.

18  Tenant has leased several apartments already and stands to lose $49,000 in accrued income.

19. As a result of said fraud, tenant will be damaged in the sum of Four Hundred and Forty-nine Thousand Dollars ($449,000).

WHEREFORE PLAINTIFF PRAYS that this Honorable Court will:

    1. Deny Plaintiff the relief granted.

    2. Award Counter-Plaintiff damages of $549,000.

    3. Award Counter-Plaintiff attorneys fees and costs of suit

_(signature)_

John F. Rodgers (DC Bar No. 295824)
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000
Counsel for Defendant/Counter Plaintiff

## JURY DEMAND

A jury trial is demanded by Defendant.

Respectfully submitted,
Time and Place World LLC
By Counsel

_(signature)_

John F. Rodgers (DC Bar No. 295824)
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000
Counsel for Defendant/Counter Plaintiff

## VERIFICATION

State of _Virginia_
City/~~County~~ of _Alexandria_ : ss

I, T. Mitchell Willey, Manager of Time & Place World, L.L.C, being duly sworn do hereby testify and affirm that the allegations above are true correct and accurate to the best of my knowledge and belief.

_(signature)_
T. Mitchell Willey

Subscribed and sworn before me a Notary Public, in and for the jurisdiction aforesaid, by T. Mitchell Willey as manager of Time & Place World, L.L.C., this _27_ day of _May_, 2007.

_(signature)_
_Notary Public - Virginia_
_My Commission expires: 1/31/09_

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Answer and Counterclaim was served on Greenstein and Luchs, PC, 1620 L Street, NW, Suite 900, Washington, DC 20036 by hand/first class mail postage prepaid this _1st_ day of June, 2007.

John F. Rodgers

Counsel for Defendant

**Exhibit D:  Notice of Removal**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division - Landlord and Tenant Branch

Quality Management, L.L.C
     Plaintiff

    v.                           LT 14591-07

TIME AND PLACE WORLD, L.L.C.
     Defendant

### NOTICE OF AND GROUNDS TO REMOVE ACTION TO FEDERAL COURT

COMES NOW THE DEFENDANT, by counsel who notices this Honorable Court to remove this action to the United States District Court for the District of Columbia on the grounds of diversity of citizenship and amount.

1. Jurisdiction is based upon Diversity of Citizenship and Amount 28 U.S.C. §1332.

2. Removal is permitted under 28 U.S.C. §1441, et seq.

3. Defendant is a Virginia Limited Liability Company with principal address at 712 Prince Street, Alexandria, Virginia 22314.

4. Plaintiff is a Maryland Limited Liability Company whose principal offices are located at 3412 Auchentoroly Terrace, Baltimore, MD 21217.

5. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

6. The amount in controversy is based upon following factors:

    A. The monthly rent for the leasehold is $7,400.

    B. The controversy involves whether, lease has expired or not. If it has not, then the value of the leasehold interest computed by the value of the lease is $133,000.

    C. Tenant has filed counterclaims asserting damages for early lease termination.

    D. Tenant currently provides temporary occupancy to others in the leased

premises and charges $400-500 per night.

E.   Should the lease be cut short tenant would stand to lose income of up to $449,000 up to January 31, 2008, and if renewed up to $1,310,850.

F.   Defendant has commitments for $40,000 of receipts accrued for periods through the term of the lease.

G.   Tenant expended $150,000 in leasehold improvements which would be lost if the lease were terminated early.

7.   Appended is Defendant's answer and counterclaim (which is incorporated by reference herein) in which it has requested damages of $549,000 plus costs and attorney's fees.

8.   Attached hereto is the filing fee for Federal Court in the sum of $350.00.

Respectfully submitted,
Time & Place World, LLC
By Counsel

John F. Rodgers (Bar No. 295824)
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000
Counsel for Defendant/Counter-Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Pleading was served on Joshua Greenberg, Greenstein Delorme and Luchs, PC, 1620 L Street, NW, #900, Washington, DC 20036. By first class mail postage prepaid this 1st day of June, 2007.

John F. Rodgers
Counsel for Defendant

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division - Landlord and Tenant Branch

Quality Management, L.L.C
     Plaintiff

      v.                       LT 14591-07

TIME AND PLACE WORLD, L.L.C.
     Defendant

## ANSWER AND COUNTERCLAIM

### ANSWER

Defendant denies the allegations in the Complaint to the extent there are any allegations in the Complaint.

### AFFIRMATIVE DEFENSES

1. Laches.

2. Estoppel.

3. Accord and Satisfaction.

4. Prior breach of contract in the landlord used self-help to take over part of leased space.

5. License.

6. Fraud.

    A. When Defendant rented the space he relied upon certain assurances by Plaintiff in formation of the contract that the lease continued until 2008 and that he would have use of certain rooms in the space on an as needed basis and Tenant would be permitted to post a sign outside of the building.

    B. Plaintiff has not abided by these terms.

## COUNTERCLAIM
## COUNT 1 - BREACH OF LEASE

1. Defendant- Counter/Plaintiff is a Virginia limited liability company with offices and space located at 1020 16th Street, NW, Washington, DC, 20036 (herein "Tenant")

2. Plaintiff- Counter/Defendant is the owner of 1020 16th Street, NW, Washington, DC 20036 (herein "Landlord").

3. Plaintiff-Counter/Defendant (herein called "Landlord") and Plaintiff (herein called "Tenant") entered into a lease dated February 26, 2004.

4. On or about April, 2006, Landlord in violation of the lease and DC Law removed Plaintiff's belongings and barred plaintiff from using the conference room as stipulated in the lease and removed signage of Tenant without securing a Court order. Said violation has been on-going since April, 2006.

5. On May 1, 2006 and again on May 15, 2006, Tenant informed landlord of the violation in writing.

6. Tenant withheld a portion of its rents at that time, and kept them available should the breach be cured.

7. On or about January 6, 2007, Landlord wrote to tenant and asked about the back rents.

8. On or about January 8, 2007, Tenant responded to landlord with copies of earlier letters.

9. On or about February 9, 2007, in retaliation for Tenant's objections to landlord's self-help breach of the lease and DC laws, landlord's agent wrote to Tenant informing tenant that the lease would be expiring on February 28, 2007 and demanded that Tenant vacate the premises.

10. Tenant responded that the lease would not expire on that date but a year later and that

Landlord was in violation of the lease and said violations have not been rectified.

11. Tenant is has since March 1, 2007 paid rent in excess of the amount due because of Landlord's intentional breach of the lease in the amount $ 2,000 per month.

12. Landlord cannot enforce the terms of the lease while Landlord is in breach of the terms of the lease.

COUNT II - FRAUD

13. Landlord made certain assurances to tenant both verbally and in writing in the formation of the lease namely that the lease would run to February, 2008 and that the tenant would be permitted to use certain space in the building and to post a sign outside of the building.

14. Tenant relied upon these assurances in the formation of the contract.

15. Tenant is in the business of providing luxury temporary lodging to persons.

16. Tenant is paid by customers at a rate of $400-500 per night per room rented.

17. Tenant expended $150,000 in lease improvements which will be lost upon eviction.

18 Tenant has leased several apartments already and stands to lose $49,000 in accrued income.

19. As a result of said fraud, tenant will be damaged in the sum of Four Hundred and Forty-nine Thousand Dollars ($449,000).

WHEREFORE PLAINTIFF PRAYS that this Honorable Court will:

1. Deny Plaintiff the relief granted.

2. Award Counter-Plaintiff damages of $549,000.

3. Award Counter-Plaintiff attorneys fees and costs of suit

John F. Rodgers (DC Bar No. 295824)
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000
Counsel for Defendant/Counter Plaintiff

## JURY DEMAND

A jury trial is demanded by Defendant.

Respectfully submitted,
Time and Place World LLC
By Counsel

John F. Rodgers (DC Bar No. 295824)
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000
Counsel for Defendant/Counter Plaintiff

## VERIFICATION

State of _Virginia_
City/County of _Alexandria_ : ss

I, T. Mitchell Willey, Manager of Time & Place World, L.L.C, being duly sworn do hereby testify and affirm that the allegations above are true correct and accurate to the best of my knowledge and belief.

T. Mitchell Willey

Subscribed and sworn before me a Notary Public, in and for the jurisdiction aforesaid, by T. Mitchell Willey as manager of Time & Place World, L.L.C., this _27_ day of _May_, 2007.

Notary Public ~ Virginia
My Commission expires: 1/31/09

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Answer and Counterclaim was served on Greenstein and Luchs, PC, 1620 L Street, NW, Suite 900, Washington, DC 20036 by hand/first class mail postage prepaid this _1st_ day of June, 2007.

John F. Rodgers
Counsel for Defendant

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION — LANDLORD AND TENANT BRANCH
**BLDG. B, 409 E STREET N.W., RM. 110**
Washington, D.C.   20001        Telephone 879-1152

**COPY**

LANDLORD & TENANT FORM 1
8:30 a.m. - 5:00 p.m.
Saturday
8:00 a.m. - 12:00 p.m.

L&T. **014591 07**

**014591 07**

| | |
|---|---|
| Quality Mgt., LLC | Time & Place World, LLC |
| Plaintiff/Landlord | Defendant/Tenant |
| 1020 16th Street, N.W., Suite 100 | 1020 16th Street, NW, 6th Floor, 7th Floor, |
| Address | Address    Basement |
| Washington, D.C.          2003 6 | Washington, D.C.           20036 |
| Zip Code | Zip Code |

vs.

## COMPLAINT FOR POSSESSION OF REAL ESTATE

**DISTRICT OF COLUMBIA, ss:**

Charlotte Ingram _____ ,being first duly sworn, states:  ☐ he or she is the landlord and/or ☐ licensed real estate broker or ☐ the landlord's authorized agent of the house, apartment or office located at 1020 16th Street, N.W., 6th Floor, 7th Floor, Basement _____, Washington, D.C. 2003 6
The property is in the possession of the defendant, who holds it without right.
The landlord seeks possession of the property because:

A. ☐ The tenant failed to pay: $ _____ , total rent due from _____ to _____ ; $ _____ ,
late fees; and/or $ _____ , other fees *(Specify)*
The monthly rent is $ _____ . The total amount due to the landlord is $ _____
Notice to quit has been: ☐ served as required by law ☐ waived in writing.

B. ☐ Tenant failed to vacate property after notice to quit expired. *(copy attached).*

C. ☒ For the following reason: *(explain fully)*
Tenant failed to vacate upon expiration of lease.

Notice to quit is: ☒ not required   ☐ waived in writing   ☐ other

Therefore, the landlord asks the Court for:
☒ judgment for possession of the property described.
☐ judgment for rent, late fees, other fees and costs in the amount of $ _____
☒ an order of the Court that all future rent be paid into the Registry of the Court until the case is decided.

*Charlotte Ingram*

Subscribed before me this __8th__ day of __May__ __2007__

Plaintiff / Landlord or Agent

Notary Public

08 / 16 / 2010
My Commission expires

## SUMMONS — TO APPEAR IN COURT

**JUN - 1 2007**

YOU ARE HEREBY SUMMONED AND REQUIRED TO APPEAR ON _____ AT 9:00 A.M. PROMPTLY, in Landlord and Tenant Court, Courtroom Bldg. B, 409 E Street N.W. to answer your landlord's complaint for possession of the premises listed in the above complaint. If you live on the premises and you are not named as a tenant you must come to court if you claim a right to possession of the premises.

## CONVOCATORIA — DE COMPARENCIA AL TRIBUNAL

A USTED SE LE ORDENA Y EXIGE QUE COMPAREZCA EL __JUN - 1 2007__ , A LAS 9:00 A.M. al Tribunal de Arrendadores y Arrendatarios, Edificio, B, 409 E Street N.W. a contestar la demanda entablada por ocupacion de la propiedad aqui citada. Si usted vive en esa propiedad sin que se le mencione como inquilino, debe presentarse al Tribunal para reclamar cualquier derecho de ocupacion que tenga sobre la misma.

GREENSTEIN DELORME & LUCHS, P.C.

Plaintiff's/Landlord's Attorney Joshua M. Greenberg/Abrielle B. Anderson
Abogado del demandante/Arrendador

| | |
|---|---|
| 1 620 L St., NW, #900, WDC 2003 6 | |
| Address/Direccion | Zip Code/Codigo postal |
| (202) 452-1400 | 489323/501203 |
| Phone No | Unified Bar No. |
| Telefono | No. de afiliacion Sociedad de Abogados |

**CLERK OF THE COURT
SECRETARIO DEL TRIBUNAL**

Costs of this suit to date are
Costos del juicio hasta la fecha

$ 26.90